IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION


**JEFFERY R. MORELAND,** **PLAINTIFF**

v.  Civil Action No.:1:08CV82-SAA

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,** **DEFENDANT**


**MEMORANDUM OPINION**


This case involves an application under 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security denying the application of plaintiff Jeffery R. Moreland for period of disability and disability insurance benefits (DIB) under §§ 216(I) and 223 of the Social Security Act.[1] Plaintiff applied for benefits on October 21, 2002, alleging that she became disabled on October 30, 2000, due to injuries to his left shoulder, hand and arm; high blood pressure, anxiety, heart valve leak, low back pain, left knee pain, and emphysema. The plaintiff's claim was denied initially and on reconsideration. Plaintiff requested a hearing before an administrative law judge [ALJ]. After the hearing, the ALJ issued an unfavorable decision on April 19, 2005, and plaintiff properly filed a request for review with the Appeals Council. On January 9, 2007, the Appeals Council granted plaintiff's request for review and remanded the ALJ's decision. A second hearing was held before another ALJ on April 19, 2007, who issued a new decision on July 31, 2007 finding that the plaintiff was not disabled under the Act. The

---

[1] The plaintiff's earnings record established that he has sufficient quarters of coverage to remain insured through September 30, 2002.

plaintiff again requested review by the Appeals Council. The Appeals Council denied this (second) request for review on November 15, 2007, and the plaintiff properly appealed to this court.

FACTS

The plaintiff was born August 3, 1970. He has a tenth grade education (Tr. 69, 240) and was thirty years old at the time he alleged he became disabled. (Tr. 104). His past relevant work was as a truck driver, heavy equipment operator, upholstery worker, farmer, hand packager, package distributor and concrete laborer. (Tr. 107). Of his past relevant work, the majority was preformed at the medium level. (Tr. 495-496). The ALJ determined that the plaintiff suffered from "severe" impairments including shoulder, arm, hand, back, and knee pain, chronic obstructive pulmonary disease (COPD), and hypertension, but that these impairments did not meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1. (Tr. 21, Finding Nos. 3 and 4).

The ALJ determined that the plaintiff retains the Residual Functional Capacity (RFC) to perform sedentary work except that he could lift and carry more than 10 pounds occasionally and 5 pounds frequently, stand and walk for no more than 4 hours in an 8-hour work day, sit no more than 6 hours in an 8-hour work day, could occasionally climb, balance, stoop, crouch, kneel and crawl, was limited in his ability to reach, handle, push and pull with the left upper extremity, and must avoid heights, moving machinery, temperature extremes, chemicals dust, fumes, humidity and vibration. (Tr. 22, Finding No. 5). Considering all necessary factors and the evidence in the record, the ALJ determined that the plaintiff's objective complaints were not entirely credible. (Tr. 25). Considering the plaintiff's age, education, work experience and RFC, the ALJ used the

2

Medical-Vocational Guidelines as a framework in combination with the testimony of a vocational expert ("VE"), and determined that the plaintiff was capable of performing work that exists in significant numbers in the national economy. (Tr. 27). Consequently, the ALJ held that the plaintiff was not under a disability as defined by the Social Security Act. *Id.*

On appeal to this court, the plaintiff raises the following:

1. Whether ALJ fully considered the assessment of the VE at the hearing;

2. Whether the ALJ arbitrarily constructed an unreasonable hypothetical or provided an incomplete description of pertinent factors to the VE;

3. Whether the ALJ fully considered all the medical evidence relating to the plaintiff's limitations; and

4. Whether the ALJ used an incorrect analogy in consideration of a point of the beginning of a disability.

Docket 10, p.1. The parties have each briefed these issues and the court is ready to rule.

## STANDARD OF REVIEW

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[2] The burden rests upon the plaintiff throughout the first four steps of this five-step process to prove disability, and if the plaintiff is successful in sustaining his burden at each of the first four levels then the burden shifts to the Commissioner at step five.[3] First, plaintiff must prove he is not currently engaged in substantial gainful activity.[4] Second, the plaintiff must prove his impairment is "severe" in that it "significantly limits his physical or

---

[2]*See* 20 C.F.R. §§ 404.1520, 416.920 (2003).

[3]*Muse v. Sullivan,* 925 F.2d 785, 789 (5th Cir. 1991).

[4]20 C.F.R. §§ 404.1520(b), 416.920(b) (2003).

3

mental ability to do basic work activities . . . ."[5] At step three the ALJ must conclude the plaintiff is disabled if he proves that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1.[6] If plaintiff does not meet this burden, at step four he must prove that he is incapable of meeting the physical and mental demands of his past relevant work.[7] At step five the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that he is capable of performing other work.[8] If the Commissioner proves other work exists which the plaintiff can perform, the plaintiff is given the chance to prove that he cannot, in fact, perform that work.[9]

The court considers on appeal whether the Commissioner's final decision is supported by substantial evidence, and whether the Commissioner used the correct legal standard. *Muse v. Sullivan,* 925 F.2d 785, 789 (5th Cir. 1991); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990). "To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept it as adequate to support a conclusion; it must be more than a scintilla but it need not be a preponderance . . . ." *Anderson v. Sullivan,* 887 F.2d 630, 633 (5th Cir. 1989) (citation omitted). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must

---

[5] 20 C.F.R. §§ 404.1520, 416.920 (2003).

[6] 20 C.F.R. § 404.1520(d), 416.920 (2003). If a claimant's impairment meets certain criteria, that claimant's impairments are "severe enough to prevent a person from doing any gainful activity." 20 C.F.R. §§ 404.1525, 416.925 (2003).

[7] 20 C.F.R. §§ 404.1520(e), 416.920(e) (2003).

[8] 20 C.F.R §§ 404.1520(f)(1), 416.920(f)(1) (2003).

[9] *Muse*, 925 F.2d at 789.

4

be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994), citing *Richardson v. Perales,* 402 U.S. 389, 390, 28 L.Ed.2d 842 (1971).

DISCUSSION

1. Testimony of the Vocational Expert

On appeal, the plaintiff argues that the ALJ failed to fully consider the assessment of the VE at the hearing and arbitrarily constructed an unreasonable hypothetical providing an inadequate or incomplete description of pertinent factors to the VE to allow proper evaluation. Specifically, the plaintiff argues that he has no use of his left upper extremity and disabling pain that would preclude his performance of work identified by the VE as consistent with the plaintiff's RFC.

At the hearing, the ALJ posed the following questions to the VE:

Q. Assume Claimant to be of the age, education and having the work history as he's testified and the transferable skills as you've testified. That he has pain and impairments that affect his abilities as he's testified. Can he return to his past relevant work?
A. No, Your Honor.
Q. Would there be jobs in the national economy and in the state that such an individual could perform?
A. No, Your Honor.
ALJ: Assume Claimant to be of the age, education and having the work history as he's testified and the transferable skills as you've testified. That he has – assume I should find that he has pain and impairments which affect his abilities as follows. That he has left shoulder pain and limitation of motion, bilateral epichondilitis [phonetic] in his elbows with decreased grip strength. He can lift and carry no more than 10 pounds occasionally, 5 pounds frequently. He can stand for no more than 20 minutes at a time, no more than four hours out of an eight-hour day due to arthritis in his hips and left knee. That he can sit for no more than 30 minutes at a time and no more than six hours out of an eight-hour day. He can never climb a ladder, can occasionally climb steps, can occasionally balance, bend, crouch or squat, kneel and crawl. I don't believe he can crawl though. I'm going to say no. Reaching, he cannot reach above his left shoulder and cannot do

5

        fine manipulation with his hands due to the epichondilitis.  Pushing and
        pulling is limited to the same extent as lifting.  He is unable to work at
        heights, around moving machinery, in temperature extremes. . . .
        chemicals, dust, fumes, humidity, vibrations.  Can he return to his past
        relevant work?
A.     No, Your Honor.
Q.     Would there be jobs available in the national economy and in the state of
        Mississippi such an individual could perform?
A.     Yes, Your Honor. . . .
A.     Job number one is surveillance systems monitor.  It's a sedentary, unskilled job.
        DOT number 379.367-010.  There are 1,500 in the state of Mississippi, 187,000 in
        the national economy.  Job number two would be a charge account clerk.  It's also
        a sedentary, unskilled job. DOT number 205..367-014.  840 in the state of
        Mississippi, 319,000 in the national economy. . . .
Q.     If we – if the pain that he experiences in his shoulder and hand is of a severity hat
        interferes with his ability to maintain concentration and attention for no more than
        five hours out of an eight-hour day, would that affect these jobs or all jobs?
A.     That would preclude him from working at any job.

(Tr. 496 - 498).  The second hypothetical question posed by the ALJ recognized the plaintiff's limitations regarding his left shoulder, arm and hand – "That he has left shoulder pain and limitation of motion, bilateral epichondilitis [phonetic] in his elbows with decreased grip strength. . . . Reaching, he cannot reach above his left shoulder and cannot do fine manipulation with his hands due to the epichondilitis" – the hypothetical is consistent with the ALJ's determination of the plaintiff's RFC as relating to his left shoulder, arm and hand which determined that he is "limited in his ability to reach, handle, push and pull with the left upper extremity."  (Tr. 496-497, 27).  Plaintiff argues that "[a]ll jobs identified would require more than one hand" and that his pain, coupled with an August 8, 2002 statement from Dr. Thorderson to the effect that plaintiff has no use of his left arm, should have resulted in a finding that there were no jobs that he could perform.  The plaintiff neglects to mention, however, that a little over two months later Dr. Thorderson concluded that plaintiff had a permanent restriction in lifting,

6

pushing and pulling to 10 pounds, yet he did not preclude use of plaintiff's left arm. (Tr. 237-238). Although the plaintiff contends that he is unable to perform the jobs listed by the VE because he would be unable to perform them with one arm, he neither offered nor pointed to any objective evidence to support the alleged limitation.[10]

Plaintiff also questions the hypothetical questions posed to the VE as improper arguing that the questions did not account for plaintiff's true limitations. A hypothetical question is considered proper and supported by substantial evidence when the ALJ includes all the plaintiff's credible limitations and capacities. *See Zimmerman v. Astrue*, 288 Fed. Appx. 931 *6 (5th Cir. 2008) slip op. The hypothetical need include only those impairments and limitations found credible by the ALJ. *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). The ALJ may rely on the expertise of a VE to determine whether the plaintiff's residual work skills can be used in other occupations and in identifying the specific occupations in which they may be used. 20 C.F.R. § 404.1566(e). "The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986). Social Security regulations provide that a VE is qualified to compare all the unique requirements of a specified job with the particular limitations a suffered by the plaintiff and aid the ALJ in reaching a reasoned conclusion whether the claimant can perform the specific job requirements. *Id.*

In this case, the ALJ's hypothetical to the VE included the limitations imposed by the

---

[10] The only medical evidence that could be supportive of the plaintiff's contention that he is unable to use his left arm is found in a medical report from Dr. James Gray Adams dated November 3, 2004. (Tr. 220-231). This report, while it may or may not support the plaintiff's contention, was almost two years after plaintiff's last date insured.

plaintiff's left shoulder, arm and hand pain, which the ALJ found credible.[11] Of the two jobs listed by the VE, surveillance system monitor does not require reaching, pushing, pulling, fingering or handling; however, after reviewing the Dictionary of Occupational Titles, the court concludes that the job of charge account clerk conceivably does require frequent reaching and handling and occasional fingering.[12] Although there is no indication that these things could not

---

[11]The ALJ's limitations, as outlined in his RFC finding, did not preclude use of the plaintiff's left arm entirely, but rather limited the plaintiff's use of the left arm – particularly his left upper extremity. These limitations are less restrictive than the plaintiff's contention that he is completely unable to use his left arm. Nevertheless, they are in accord with the medical evidence in the record. Given that the ALJ properly determined the plaintiff's subjective complaints were not entirely credible, the limitations as outlined in the plaintiff's RFC are reasonable and supported buy the record.

[12]    379.367-010 SURVEILLANCE-SYSTEM MONITOR
Monitors premises of public transportation terminals to detect crimes or disturbances, using closed circuit television monitors, and notifies authorities by telephone of need for corrective action: Observes television screens that transmit in sequence views of transportation facility sites. Pushes hold button to maintain surveillance of location where incident is developing, and telephones police or other designated agency to notify authorities of location of disruptive activity. Adjusts monitor controls when required to improve reception, and notifies repair service of equipment malfunctions. . .
STRENGTH: Sedentary Work - . . . .
Finger Dexterity: Level 4 - Lowest 1/3 Excluding Bottom 10%
Low Degree of Aptitude Ability
Manual Dexterity: Level 4 - Lowest 1/3 Excluding Bottom 10%. . .
Reaching: Not Present - Activity or condition does not exist
Handling: Not Present - Activity or condition does not exist
Fingering: Not Present - Activity or condition does not exist

205.367-014 CHARGE-ACCOUNT CLERK
Interviews customers applying for charge accounts: Confers with customer to explain type of charge plans available. Assists customer in filling out application or completes application for customer. Reviews applications received by mail. Files credit applications after credit department approves or disapproves credit. May check references by phone or form letter and notify customer of acceptance or rejection of credit [CREDIT CLERK (clerical)]. May verify entries and correct errors on charge accounts [CUSTOMER-COMPLAINT CLERK (clerical)], using

be done with one arm, the court will give the plaintiff the benefit of the doubt. Striking charge account clerk from consideration, there remains the position of surveillance system monitor which the plaintiff could perform even without the use of one arm, thus, the ALJ's decision finding the plaintiff not disabled under the act, with regard to the claims presently before this court, is supported by substantial evidence and should be upheld.

2.     Consideration of the Medical Evidence

Plaintiff next argues that the ALJ failed to fully consider all medical evidence in determining the plaintiff's RFC. Again plaintiff points to the medical reports of Drs. Thorderson and Adams to support his argument that his pain and other symptoms contributed to the total loss of functioning of his left arm. (Tr. 220-227, 240). Review of the record, however, shows that the plaintiff's RFC, as determined by the ALJ, is consistent with the medical evidence provided by his treating physicians Drs Stimpson, Rice and Thorderson at North Mississippi Sports Medicine and Orthopaedic Clinic. (Tr. 237-291). These treating sources consistently limited him to lifting/carrying 10 pounds. (Tr. 237-238, 267-268, 285). They did not assess any other specific exertional limitations, and the ALJ based some of the non-exertional limitations on plaintiff's own testimony and, to a limited extent, the state agency medical consultants. (Tr. 21-

---

adding machine. May answer credit rating requests from banks and credit bureaus. May issue temporary shopping slip when credit references appear satisfactory. . .
STRENGTH: Sedentary Work - . . .
Reaching: Frequently - Exists from 1/3 to 2/3 of the time
Handling: Frequently - Exists from 1/3 to 2/3 of the time
Fingering: Occasionally - Exists up to 1/3 of the time
Feeling: Not Present - Activity or condition does not exist

26). Although the ALJ did find that the plaintiff's subjective complaints not entirely credible, his residual functional capacity determination was not wholly inconsistent with the plaintiff's complaints and generally conforms to the plaintiff's testimony regarding his activities of daily living. *See* 20 C.F.R. 404.1529, SSRs 96-4p and 96-7p.

It is the ALJ's task to evaluate the medical opinions in light of other information contained in the record. *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995). The evaluation of a plaintiff's subjective symptoms is particularly within the ALJ's discretion as he has had an opportunity to observe the plaintiff. *Harrell v. Bowen*, 862 F.2d 471, 480 (5th Cir. 1988). Although medical evidence alone is not the sole determining factor of the credibility of a plaintiff's subjective evidence, it is an important factor to consider, *Russell v. Sullivan*, 950 F.2d. 542, 545 (8th Cir. 1991), and, subjective complaints must be corroborated at least in part by objective evidence. *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989). The record clearly reflects the ALJ's conscientious, clear consideration of the evidence, including numerous factors relating to plaintiff's subjective complaints. The fact that the ALJ did not find that the plaintiff had the severe level of pain and limitations on his functioning that he claims is completely within the ALJ's discretion. Upon diligent review, it is clear that the ALJ carefully considered the evidence and the time period in issue according to the applications filed and the last date plaintiff was insured. He made a determination regarding the plaintiff's RFC that is well supported by the evidence. Applying all necessary regulations and legal standards, and relying on the testimony of the VE, the ALJ determined that the plaintiff was not disabled under the Act. The court concludes that his decision was supported by substantial evidence and should be affirmed.

3. "Closed Period of Disability"

Finally, the plaintiff argues that the record in this case supports a finding of a closed period of disability. Plaintiff's otherwise unsupported reason for this argument is that "[c]onsidering the volume of evidence and two Administrative Law Judge Decisions, it appears that the finding of "not disabled" smacks of a finding that the Plaintiff is no longer disabled rather than being disabled at some given point. In this case it appears that a closed period of disability can be awarded from October 30, 2000 to a Cessation date of July 31, 2007." Docket 10, p. 6. This argument warrants little discussion.

It is the policy of the Social Security Administration to establish a closed period of disability where the evidence establishes that a plaintiff was unable to engage in substantial gainful activity for a continuous period of 12 months, but the claimant is no longer disabled by the time a disability determination is made. 3 Soc. Sec. Law & Prac. § 39:64; *see* Title 42 U.S.C. § 416(i)(2)(D). The plaintiff's application in this case was for a period of disability and disability insurance benefits under Title II, Sections 216(i) and 223 of the Social Security Act. To be awarded benefits under Title II of the Social Security Act, the plaintiff has the burden to show that he was disabled on or before the date that his insured status expired – September 30, 2002. The ALJ's decision is clear that the plaintiff "was not under a disability as defined by the Social Security Act, at any time from October 30, 2000, the alleged onset date, through September 30, 2002, the date last insured." (Tr. 27, Finding No. 11). The undersigned has determined that the ALJ's decision is supported by substantial evidence and should be affirmed. The plaintiff has failed to bring forth any evidence to the contrary. Therefore, the court holds that plaintiff's argument that he should be entitled to benefits for a closed period of disability is

without merit.

## CONCLUSION

In accordance with the reasons stated in this memorandum opinion, the undersigned concludes that the decision of the ALJ was supported by substantial evidence and should be affirmed. A Final Judgment in accordance with this opinion will be issued.

THIS, this, the 30th day of September, 2009.

/s/ S. Allan Alexander  
UNITED STATES MAGISTRATE JUDGE